UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY HAUB, *et al.*, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION H-12-3658 |
| § | |
| AXON DOWNHOLE TOOLS, INC., *et al.*, § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION & ORDER**

This case began in Harris County district court when plaintiffs Gary Haub, Rex Inman, and Bart Powell (the "plaintiffs") filed a petition accusing multiple defendants of breaching an agreement, and committing several torts along the way, to purchase the plaintiffs' company HDD Rotary Sales LLC ("HDD") in bankruptcy. Dkt. 13, Ex. 2 (original petition) at 3–6.[1] Specifically, plaintiffs sued two groups of defendants: (1) the purported buyers of HDD: Gary Stratulate, Jeff Merecka,[2] Axon EP, Inc., Axon Downhole Tools, Inc., Axon Tubular Products, Inc., and Axon Energy Products, AS (collectively, the "Axon Defendants");[3] and (2) the buyers' chosen counsel: Leonard Simon and his law firm, Pendergraft & Simon, L.L.P. (collectively, the "Simon Defendants"). *Id.* at 1–3. Plaintiffs sued all defendants for tortious interference with contract, breach of contract, fraudulent misrepresentation, violations of the Texas Theft Liability Act, and civil conspiracy. *Id.* at 6–10.

---

[1] Before HDD filed for Chapter 11 bankruptcy protection in September 2011, the plaintiffs were the sole owners/members of HDD, a limited liability company. Dkt. 13, Ex. 2 at 3.

[2] Stratulate and Merecka are Axon's corporate representatives. Dkt. 13, Ex. 2 at 4 n.2.

[3] For ease of reference throughout this opinion, the court will refer to the subgroup of Axon affiliated companies, namely Axon EP, Inc., Axon Downhole Tools, Inc., Axon Tubular Products, Inc., and Axon Energy Products, AS, as "Axon."

Plaintiffs further allege legal malpractice and violations of the Texas Deceptive Trade Practices Act ("DTPA") against the Simon Defendants only. *Id.* at 8–10.

The Simon Defendants removed the case to federal court on grounds that it was related to HDD's pending bankruptcy proceeding. Notice of Removal, *Haub v. Axon Downhole Tools, Inc.* (*In re HDD Rotary Sales, LLC*), Adv. No. 12-3236 (Bankr. S.D. Tex. May 13, 2012), Dkt. 1 ("Haub Adv."). For reasons explained further below, Judge Isgur issued a recommendation, which this court ultimately adopted, that the reference be withdrawn for a district court to adjudicate the plaintiffs' causes of action. Dkt. 1. Judge Isgur found that only a district court could exercise the constitutional power required to hear all of plaintiffs' claims, and a district court should hear the case because it implicated a potential abuse of judicial process and numerous violations of the federal Bankruptcy and Criminal Codes. *Id.* at 18–20.

Following withdrawal of the reference, the parties extensively briefed several issues, including whether this court should dismiss plaintiffs' petition on grounds that the claims depend on an allegedly unlawful, and thereby void, contract. Pending before the court are three motions: (1) Stratulate and Merecka's supplemental motion to dismiss (Dkt. 8); (2) Axon's supplemental motion to dismiss (Dkt. 9);[4] and (3) the Axon Defendants' motion for summary judgment. Dkt. 13. After considering the motions, responsive briefing, and applicable law, the Axon Defendants' supplemental motions to dismiss (Dkts. 8–9) are **GRANTED**, and plaintiffs' claims are **DISMISSED WITH PREJUDICE**. The Axon Defendants' motion for summary judgment (Dkt. 13) is **DENIED AS MOOT**.

---

[4] The Simon Defendants joined the Axon Defendants' supplemental motions to dismiss. Dkt. 10.

## I. BACKGROUND[5]

In June 2011, Stratulate and Merecka, on behalf of Axon, met with plaintiffs in Axon's offices in Harris County to discuss Axon's proposal to purchase HDD. Dkt. 13, Ex. 2 at 3–4. The consideration for the deal included Axon's payment of seventeen million dollars in return for HDD's assets and HDD's patented P-Tech+ technology. *Id.* at 4. Axon further proposed to (1) let plaintiffs retain a thirty-percent ownership interest in HDD, (2) pay plaintiffs an additional sum of $1,867,000.00, and (3) provide them with new employment contracts, including bonuses and medical benefits. *Id.* Before finalizing the deal, Axon began auditing HDD's accounting records. *Id.*

In September 2011, Stratulate and Merecka, plaintiffs, and HDD's corporate counsel Jeff Lamberth had a final meeting in Axon's offices. *Id.* at 4–5. Stratulate and Merecka announced that to conclude the deal, plaintiffs would have to agree to two additional conditions: (1) plaintiffs would file a Chapter 11 bankruptcy petition for HDD, and (2) do so with the assistance of a bankruptcy attorney of Axon's choice, Leonard Simon, who would represent the interests of HDD and the individual plaintiffs during the bankruptcy process. *Id.* Plaintiffs initially balked at Simon's representation in bankruptcy, but they relented when the defendants stated that the deal was contingent on Simon's involvement. *Id.* at 5 n.4. Axon further agreed to pay Simon's legal fees incurred for services to plaintiffs and HDD, and plaintiffs consented to HDD's sale for a reduced price, $9,105,000.00, while receiving the same individual benefits described above. *Id.* at 5.

Plaintiffs performed their purported obligations and Simon filed HDD's Chapter 11 bankruptcy petition on September 23, 2011. Chapter 11 Voluntary Petition, *In re HDD Rotary Sales, LLC*, Case No. 4:11-bk-38053 (Bankr. S.D. Tex. Sept. 23, 2011), Dkt. 1 ("HDD Bankr."). The

---

[5] When considering a motion to dismiss for failure to state a claim, the court views the well-pleaded allegations in the live complaint as true and in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

defendants, however, did not perform their end of the bargain. Axon did not purchase HDD, nor did Axon pay plaintiffs any of the previously-contemplated additional payments or benefits. Dkt. 13, Ex. 2 at 5–6. Lastly, Axon did not pay Simon, who billed HDD approximately $290,000.00 for his attorneys' fees and expenses related to the bankruptcy. *Id.*

In response, plaintiffs filed this suit on April 9, 2012. *Id.* The Simon Defendants removed the case on May 13, 2012, and it was assigned as an adversary proceeding to Judge Isgur, who was overseeing the HDD bankruptcy. Haub Adv. Dkt. 1. The Simon Defendants filed a motion to dismiss on May 24, 2012, arguing that plaintiffs lacked standing to bring their claims. Haub Adv. Dkt. 5. The Axon Defendants also filed a similar motion to dismiss on standing grounds. Haub Adv. Dkt. 8. Plaintiffs responded with a motion to remand, on June 8, 2012, alleging, *inter alia*, that the court lacked subject-matter and removal jurisdiction to hear their claims. Haub Adv. Dkt. 10.

Judge Isgur held a hearing on the various motions on July 18, 2012. Dkt. 1 at 4. On December 12, 2012, he issued a report and recommendation to the district court. *Id.* at 1. He recommended withdrawal of the reference for the adversary proceeding, as he found that he lacked bankruptcy jurisdiction over certain causes of action. *Id.* at 18. He further concluded that a district court could hear all of the claims under its supplemental jurisdiction, and it should do so to ensure federal consideration of troubling allegations regarding an abuse of the bankruptcy laws. *Id.*

On March 14, 2013, this court adopted Judge Isgur's report and recommendation and withdrew the reference. Dkt. 6. The court further denied plaintiffs' motion to remand (Haub Adv. Dkt. 10) and granted the defendants' motions to dismiss in part. *Id.* The court agreed with Judge Isgur that plaintiffs lacked standing to pursue their tortious interference claim, as it belonged exclusively to the HDD bankruptcy estate. *Id.*; Dkt. 1 at 10–11 ("The Plaintiffs allege intentional

4

interference with contracts related to pipe sales.  Any cause of action for tortious interference with those contracts would belong to the entity HDD, not the Plaintiffs as individuals.").

As to the plaintiffs' remaining claims, the Axon Defendants filed supplemental motions to dismiss on March 27, 2013, which the Simon Defendants joined.  Dkts. 8–10.  The defendants argue that if the court accepts plaintiffs' well-pleaded allegations as true, as it must on a 12(b)(6) motion to dismiss, then plaintiffs have alleged an illegal, unenforceable contract and cannot recover on their contract and related tort claims.  Dkt. 8 at 2–3; Dkt. 9 at 2–3; Dkt. 10 at 1–2.  The Axon Defendants also filed an alternative motion for summary judgment, offering extrinsic evidence to show that plaintiffs' claims fail on illegality and other grounds.  Dkt. 13.  The plaintiffs and defendants exchanged a series of responsive briefs, and the motions are ripe for disposition.  Because the defendants' motions to dismiss on illegality grounds are meritorious, the court restricts its analysis to the live complaint and briefing on the motion to dismiss.

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).  In other words, to overcome a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual allegations, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)

(quoting *Twombly*, 550 U.S. at 570). Plaintiff demonstrates a "plausible" claim when he provides enough facts to create a reasonable expectation that discovery will produce further evidence tending to establish his claim. *Twombly*, 550 U.S. at 556. "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 558 (internal quotation marks omitted)).

### III. ANALYSIS

The defendants move to dismiss plaintiffs' claims on grounds that the alleged contract is unlawful and may not be enforced by a court of law. The court first examines the substantive law related to illegality and then determines whether plaintiffs' particular claims may proceed.

*A.    Substantive Law*

It has long been the rule in Texas that "'[a] contract to do a thing which cannot be performed without violation of the law'" violates public policy and is void and unenforceable in a court of justice. *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (quoting *Lewis v. Davis*, 199 S.W.2d 146, 148–49 (Tex. 1947)); *DiFrancesco v. Houston Gen. Ins. Co.*, 858 S.W.2d 595, 598 (Tex. App.—Texarkana 1993, no writ) ("It is a familiar law of contracts that an illegal agreement is unenforceable."). Texas courts do not apply this rule to punish the parties to the illegal bargain, but rather for the protection of the public. *Id.* Courts will void a contract that is illegal or requires illegal acts of performance on its face, but a "contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner." *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 920–21 (Tex. App.—Dallas 2004, pet. struck). Illegality is an affirmative defense that must be raised and

established by the defending party. *Cruse v. O'Quinn*, 273 S.W.3d 766, 769 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Illegal" acts that may lead to the avoidance of contractual obligations include violations of criminal and civil statutes, the common law, attorney disciplinary rules, or general public policy. *See, e.g.*, *id.* at 775–76 (holding that the violation of the attorney disciplinary rules in the performance of a contract may preclude its enforcement); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 466 (Tex. App.—San Antonio 2003, no pet.) (finding that an agreement to split fees between an attorney and a unlicensed bail bond surety is illegal under the Texas Occupations Code and void); *In re Kasschau*, 11 S.W.3d at 312–13 (finding a settlement agreement unenforceable because one provision required the parties to destroy evidence in a potential criminal proceeding, in clear violation of the Texas Penal Code).

If the court finds that the parties entered in an illegal contract, no party will be afforded any recovery based on the agreement. *Cooper v. Fortney*, 703 S.W.2d 217, 222 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The court instead will leave the parties to themselves, in the same condition they occupied before seeking judicial relief. *Packard v. OCA, Inc.*, 624 F.3d 726, 730 (5th Cir. 2010) (applying Texas law).

B.  *Application of Law to the Facts*

    1.  **Plaintiffs' Breach of Contract Claim**

In the defendants' briefing, they assert several grounds to find that the alleged agreement to sell HDD is unenforceable. First, the defendants argue that plaintiffs have pled a contract in which they were to receive undisclosed side payments for selling HDD at a reduced price in bankruptcy, which was filed by Axon's chosen counsel. Dkt. 8 at 2; Dkt. 9 at 2. Defendants contend that this contract violates numerous federal laws, including 18 U.S.C. §§ 152(2), (6) (false oaths and fraudulent transfer of assets in bankruptcy), 157(1)–(3) (bankruptcy fraud); and 11 U.S.C. § 327

(prohibition of conflicted representation of debtor and adverse third parties). Dkt. 8 at 2; Dkt. 9 at 2; Dkt. 21 at 1–4. Plaintiffs respond that the contract is not void for two reasons: (1) the agreement did not *require* that the additional payments be undisclosed and therefore it could have been performed in a legal manner, precluding a declaration that it was void *ab initio*, and (2) Simon could have restricted his representation to the individual plaintiffs to avoid any ethical conflicts, which plaintiffs disclaim in any case because their interests were not materially adverse to HDD's interests in bankruptcy. Dkt. 18 at 7–9; Dkt. 25 at 2–4. As explained further below, the court holds that performance of the alleged contract would have violated 11 U.S.C. § 327, rendering the contract unenforceable, and thus the court declines to address defendants' remaining allegations of illegality.

Section 327 of the Bankruptcy Code grants the trustee the general power, subject to the court's approval, to employ professionals for assistance with estate administration. 11 U.S.C. § 327(a). However, the trustee may not hire, and the court should not approve the employment of, any person that either (1) holds or represents an adverse interest to the estate, or (2) does not meet the definition of a disinterested person, as set forth in § 101(14). *Id.* Congress did not define the phrase "adverse interest," but federal common law has established that the phrase should be construed in a broad economic sense. *In re Red Lion, Inc.*, 166 B.R. 296, 298 (Bankr. S.D. Tex. 1994). This includes any economic interest that would tend to reduce the value of the estate. *Id.*; *In re Gem Tire & Serv. Co.*, 117 B.R. 874, 877 (Bankr. S.D. Tex. 1990) ("The provisions of § 327 reflect Congress' concern for avoiding conflicts of interest as to employed professionals. Counsel employed pursuant to § 327(a) must pass the 'no adverse interest' and 'disinterestedness' tests."). Further, the limitations on the trustee, save for certain exceptions not germane to this case, also apply to debtors in possession like HDD. 11 U.S.C. § 1107(a) ("*Subject to any limitations on a trustee serving in a case under this chapter*, and to such limitations or conditions as the court prescribes, a debtor in possession shall have

8

all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.") (emphasis added).

The gravamen of plaintiffs' complaint is that, in order to close the Axon purchase of HDD and secure lucrative compensation for the plaintiffs individually, the plaintiffs had to place the company in bankruptcy using the Simon Defendants as counsel for both HDD *and* themselves. Dkt. 13, Ex. 2 at 5 ("Axon and Simon stated that Axon would pay all of Mr. Simon's legal fees and expenses for representing Mr. Haub, Mr. Inman and Mr. Powell and HDD in the HDD Chapter 11 Bankruptcy filing . . . ."). If true, this arrangement, contrary to plaintiffs' arguments that an ethical conflict and violation of § 327 could be avoided, would *necessarily* require the Simon Defendants to falsely attest to the bankruptcy court that Simon (and the firm) were disinterested and free of adverse interests in order to serve as counsel for the estate, which is precisely what happened. *See* HDD Bankr. Dkt. 35 (Simon's application to court for employment as counsel to HDD), Ex. 2 (Simon's declaration) at 2 ¶ 4(a) (averring under penalty of perjury that "I do not hold or represent any interest adverse to the estate"). Otherwise, as Judge Isgur correctly observed in his Recommendation, the bankruptcy court "should not (and would not) have approved Simon as Estate counsel." Dkt. 1 at 14. This is because pursuant to the parties' contract, Simon already would have been engaged as counsel for the plaintiffs, who stood to gain a substantial share of HDD after the bankruptcy and numerous additional benefits that clearly would have diminished the value of the HDD estate. These economic interests would place the plaintiffs, and by extension the Simon Defendants as well, in a position of material adversity to HDD, which Simon statutorily (and ethically) could not represent. *See In re Red Lion*, 166 B.R. at 298. Thus, because Simon could not represent both HDD and the plaintiffs in a manner consistent with the Bankruptcy Code and the alleged contract, that contract could not be performed without violating the law and may not be enforced in a court of law or equity. *See Gupta v. E. Idaho Tumor*

9

*Inst., Inc.*, 140 S.W.3d 747, 751 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("As a general rule, a contract to do a thing which cannot be performed without a violation of the law is unenforceable."). Plaintiffs' claim for breach of contract is dismissed with prejudice.

Before turning to plaintiffs' tort claims, the court pauses to remind the parties that its decision today flows from its duty to monitor the conduct of attorneys admitted to this district,[6] and the court is particularly troubled by plaintiffs' allegations that implicate criminal and ethical violations by multiple attorneys in this case. To be sure, the court's dismissal of plaintiffs' contract claim should not be construed as a benefit for the defendants. The court will not permit a party to assert a claim premised on the breach of an unlawful bargain that contravenes state or federal laws and public policy. *Id.* ("The purpose of this rule is to benefit and protect the public, not to protect or punish either party to the contract."). Neither party may enforce such an arrangement. *Id.*; *see also Evans v. Dynasty Transp., Inc.*, 133 S.W.3d 672, 677 (Tex. App.—Corpus Christi 2003, no pet.) ("[A]ll parties to an illegal agreement are barred from any recovery based on that agreement."); *Cooper*, 703 S.W.2d at 222 (same).

### 2.      **Plaintiffs' Remaining Claims**

Plaintiffs further assert tort claims of fraudulent misrepresentation, violations of the Texas Theft Liability Act and Deceptive Trade Practices Act, civil conspiracy, and legal malpractice. Dkt. 13, Ex. 2 at 6–10. Defendants argue that these claims should be dismissed because they are dependent on an illegal and unenforceable contract. *See* Dkt. 21 at 5 ¶ 5.

Under the Texas unlawful acts rule, a plaintiff generally may not recover for an injury that was sustained as a result of his own illegal act. *Sharpe v. Turley*, 191 S.W.3d 362, 365 (Tex.

---

[6] Rule 1 of the Southern District's Rules of Discipline requires that lawyers practicing before the court adhere to the Texas Disciplinary Rules of Professional Conduct. *See* L.R. S.D. TEX., App. A, Rule 1. The court may impose disciplinary action, and the court is not limited by those rules in imposing its discipline. *Id.* Rule 1(B).

App.—Dallas 2006, pet. denied); *see also Gulf, C. & S.F. Ry. Co. v. Johnson*, 9 S.W. 602, 621–22 (Tex. 1888) ("In those cases where it is shown that, at the time of the injury, the plaintiff was engaged in [an] illegal act, the rule is, if the illegal act contributed to the injury, [the plaintiff] cannot recover."). In this case, plaintiffs' tort claims all arise from damages that plaintiffs suffered as a result of the allegedly knowing and intentional deception surrounding the unlawful contract. Dkt. 13, Ex. 2 at 6–10. Plaintiffs would not have suffered these injuries in the absence of the agreement, and thus their tort claims are also dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons, the Axon Defendants' supplemental motions to dismiss (Dkts. 8–9) are **GRANTED**, and plaintiffs' claims are **DISMISSED WITH PREJUDICE**. The motion for summary judgment (Dkt. 13) is **DENIED AS MOOT**.

With the dismissal of plaintiffs' claims, the remaining issues in this case are defendants' counterclaims for attorneys' fees under the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code § 134.005(b); Dkt. 11 at 32–33; Dkt. 12 at 17–19; Dkt. 14 at 20–22. Should the defendants wish to proceed with their counterclaims, they shall move for summary judgment within 14 days of the date of this order. If, on the other hand, the defendants desire to withdraw their counterclaims, they should file a notice to that effect within the same period.

Signed at Houston, Texas on December 19, 2013.

_____
Gray H. Miller
United States District Judge